Jack BOARD, Leonard Pack and Donald Evans, Appellants,

v.

EUROSTYLE, INC., and Safeco, Inc., Respondents.

No. 22472.

Missouri Court of Appeals, Southern District, Division One.

July 8, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1999.

Application for Transfer Denied Aug. 24, 1999.

John M. Albright, Moore & Walsh, Poplar Bluff, for appellants.

Gregory Hoffman, Millar, Schaffer, Hoffman & Robertson, St. Louis, for respondents.

JOHN E. PARRISH, Judge.

Four employees of Rick Foster d/b/a Preferred Roofing and Construction (Foster) brought this action against Eurostyle, Inc., (Eurostyle) and Safeco, Inc., (Safeco) for double their unpaid wages plus attorney fees relative to work performed on a public works construction project for the State of Missouri. *See* §§ 107.170 and 290.300.[1] Eurostyle was the contractor for the project. Foster was a subcontractor. Safeco was the surety on a performance bond purchased by Eurostyle.

The trial court held the employees were entitled to receive double the amount of unpaid wages and attorney fees from Foster, as permitted by § 290.300, but could recover only the amount of unpaid wages from Eurostyle or Safeco. Judgment was entered for Jack Board, Leonard Pack and Donald Evans against Eurostyle and Safeco for unpaid wages in the amounts of $4,006.67, $1,630.51 and $2,750.00, respectively. They appeal.[2] This court reverses as to the amount of damages and remands with directions. In all other respects the judgment is affirmed.

Appellants present one point on appeal. They contend the trial court erred in not permitting them to collect double their unpaid wages and their attorney fees from Eurostyle and Safeco. They argue that § 290.300 permits them to recover those amounts.

Section 290.300 provides:

> Any workman employed by the contractor or by any subcontractor under the contractor who shall be paid for his services in a sum less than the stipulated rates for work done under the contract, shall have a right of action for double whatever difference there may be between the amount so paid and the rates provided by the contract together with a reasonable attorney's fee to be determined by the court, and an action brought to recover same shall be deemed to be a suit for wages, and any and all judgments entered therein shall have the same force and effect as other judgments for wages.

Section 290.300 relates to provisions in § 290.250. Section 290.250 requires public bodies undertaking public works construction projects to require contractors doing the work to pay not less than the prevailing rates of pay for the area where the work is performed.[3] The statute requires contracts pursuant to which work is performed to include "a stipulation to the effect that not less than the prevailing hourly rate of wages shall be paid to all workmen performing work under the contract." It requires all contractors' bonds to "include such provisions as will guarantee the faithful performance of the prevailing hourly wage clause as provided by contract." The statute imposes penalties on contractors that do not comply. The penalties imposed on contractors are for violations both with respect to underpayment of wages to the contractor's employees and violations with respect to underpayment of wages to subcontractors' employees.

Section 107.170.2 requires public agencies that contract for public works, "the cost of which is estimated to exceed twenty-five thousand dollars," to require contractors to provide performance bonds that include conditions for payment for "labor performed in such work whether by subcontractor or otherwise." Section 107.170.3 provides, "All bonds executed and furnished under the provisions of this

---

1. References to § 107.170 are to RSMo Supp. 1995. Other references to statutes are to RSMo 1994, unless stated otherwise.

2. The fourth plaintiff in the suit was Thomas Marler. The trial court found he had been fully paid. Mr. Marler does not appeal.

3. The Missouri Department of Labor and Industrial Relations determines the prevailing hourly rate of wages in the locality in which work is to be performed. A prevailing hourly rate of wage must be determined for each type of workman a particular job requires. *See* § 290.250.

section shall be deemed to contain the requirements and conditions as herein set out, regardless of whether the same be set forth in said bond, or of any terms or provisions of said bond to the contrary notwithstanding."

Workers on public works construction projects have the right to sue on any bond executed pursuant to § 107.170 that covers the project on which they worked. *See* § 522.300. Safeco's bond was executed pursuant to § 107.170.

Article 5 of Eurostyle's contract with the state provides, consistent with § 290.250:

It is understood and agreed by and between the parties that not less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed and not less than the prevailing hourly rate of wages for legal holiday and overtime work in the locality in which the work is performed, both as determined by the Department of Labor and Industrial Relations or determined by the court on appeal, shall be paid *to all workmen employed by or on behalf of the Contractor or any subcontractor,* exclusive of maintenance work. Only such workmen as are directly employed by the Contractor or his subcontractors, in actual construction work on the site shall be *deemed to be employed.* [Emphasis added.]

Section 290.250 requires state agencies "to take cognizance of all complaints of all violations of the provisions of sections 290.210 to 290.340 committed in the course of the execution of the contract, and, when making payments to the contractor becoming due under said contract, to withhold and retain therefrom all sums and amounts due and owing as a result of any violation of sections 290.210 to 290.340." The statute permits contractors to withhold from payments to subcontractors amounts withheld from the contractor "on account of said subcontractor's failure to comply with the terms of sections 290.210 to 290.340."

If payment has been made to a subcontractor, § 290.250 permits the contractor to maintain a lawsuit to recover appropriate amounts.

Missouri statutes clearly place the onus for compliance with prevailing wage laws applicable to public works construction projects on the contractor. They provide the contractor with remedies against a subcontractor for whose violations the contractor is liable. They require contractors to obtain performance bonds that assure payment of wages earned by their workers and workers employed by subcontractors.

■ A contractor that performs public works construction projects must cause wages to be paid of an amount "not less than the prevailing hourly rate." § 290.250. The duty imposed on the contractor extends to both the contractor's workers and subcontractors' workers. To not permit a subcontractor's underpaid employees to recover double the amount of unpaid wages and attorney fees, to which § 290.300 entitles them, from the contractor and its surety would be inconsistent with the contractor's statutory duties. To enable contractors to escape mandated contractual responsibilities by exempting them from liability imposed by § 290.300 for their subcontractors' non-payment of wages would encourage less than diligent oversight by contractors.

■ Eurostyle and Safeco argue, nevertheless, that § 290.300 is a penal statute. They contend it must be strictly construed as being intended to punish only a particular contractor or subcontractor who failed to pay employees the applicable prevailing hourly rate of pay. This court does not find that argument persuasive.

■ As Eurostyle and Safeco assert, penal statutes must be strictly construed. *State ex rel. Danforth v. European Health Spa, Inc.,* 611 S.W.2d 259, 262 (Mo.App. 1980), *quoting City of Charleston v. McCutcheon,* 227 S.W.2d 736, 738 (Mo. banc 1950).

But by the expression "strict construction" is meant that the scope of the statute shall not be extended by implication beyond the literal meaning of the terms employed, and not that the language of the terms shall be unreasonably interpreted. Courts should neither enlarge nor narrow the true meaning of penal statutes by construction, but should give effect to the plain meaning of words and where they are doubtful, should adopt the sense in harmony with the context and the obvious policy and object of the enactment.

*Moore v. Western Union Telegraph Co.,* 164 Mo.App. 165, 148 S.W. 157, 159 (1912).

*Cummins v. Kansas City Public Service Co.,* 334 Mo. 672, 66 S.W.2d 920, 925 (banc 1933), explains:

The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words used if possible; and to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning and to promote its object, and "the manifest purpose of the statute, considered historically," is properly given consideration. *See Grier* [*v. Kansas City, Clay Co. & St. Joseph Ry. Co.,* 286 Mo. 523, 228 S.W. 454, 459 (1921) ] and *Meyering* [*v. Miller,* 330 Mo. 885, 51 S.W.2d 65, 68 (1932) ] Cases, 2 Lewis, Sutherland on Stat. Const. (2d Ed.) § 363; Endlich on Interpretation of Statutes, § 329; and Maxwell on Statutes (5th Ed.) 425.

*See also Reeder v. Bd. of Com'rs of Kansas City,* 800 S.W.2d 5, 6 (Mo.App.1990).

■ Furthermore, "[c]ourts, in interpreting a particular statute, properly consider other statutes involving similar or related subject matter." *Surface v. Kelly,* 912 S.W.2d 646, 650 (Mo.App.1995). "All consistent statutes relating to the same subject are in pari materia and are construed together as though constituting one act, whether adopted at different dates or separated by long or short intervals." *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200 (Mo. banc 1991). It is

presumed that the legislature, in enacting a statute, intended a logical result; that it did not intend an unreasonable one. *Angoff v. M & M Management Corp.,* 897 S.W.2d 649, 654 (Mo.App.1995).

The public policy of this state with respect to wage earners working on public works construction projects is "that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed shall be paid to all workmen employed by or on behalf of any public body engaged in public works exclusive of maintenance work." § 290.220. The statutes applicable to prevailing wages on public works, §§ 290.210 to 290.340, provide the mechanism for implementing that policy. The contractor has overall responsibility to assure that all laborers, both the contractor's employees and subcontractors' employees, receive the prevailing wages for the project. Consistent with the state's policy of assuring that laborers who work on public works projects are properly paid is the requirement that a contractor provide a performance bond.

In arguing they are not liable for double the unpaid wages of Foster's employees or for those employees' attorney fees, Eurostyle and Safeco rely on *Coates v. U.S. Fidelity & Guaranty Co.,* 525 S.W.2d 654 (Mo.App.1975) and *Bertolino v. Vince Kelly Const. Co., Inc.,* 963 S.W.2d 331 (Mo. App.1997).

*Coates* involved a discharged employee of a contractor. The project was not a public works construction project. The insurer provided a performance bond that provided coverage to the owners of premises where work was being done. Employees of a subcontractor who had been discharged and paid with checks that had been dishonored sought recovery on the bond. The employees sought, in addition to their unpaid wages, recovery from the surety of the penalty that was imposed by § 290.110, RSMo 1969, for failure to timely pay wages owed to discharged employees.

The penalty for failure to timely pay a discharged employee's wages was continuation of those wages until the employee was paid (not to exceed 60 days).

*Coates* held that the bond gave a right of action only to the owner of the premises where the work was done. The bond did not give the employees a right of action against the surety. The bond was for payment of any final judgment obtained against the property owner for work or labor performed or materials furnished.

The circumstances in *Coates* differ from those in this case. First, and most obvious, § 290.110, the applicable statute in *Coates*, is not applicable to cases involving prevailing wages on public works. Second, the contract in this case, as required by § 290.250, holds the contractor (and its surety) liable for subcontractors that fail to comply with prevailing wages on public works statutes. Third, the employees in this case had a statutory right, as provided by § 522.300, to sue on the bond in question. *Coates* is of no assistance to Eurostyle or Safeco.

 Eurostyle and Safeco cite *Bertolino v. Vince Kelly Const. Co., Inc., supra,* for the proposition that bond claimants under § 107.170 are not entitled to more protection than privately employed workmen have under mechanics' lien laws. That assertion is overbroad. The protection that § 107.170 provides workers on public works projects are in lieu of protection mechanics' lien laws provide workers on private projects. *See Redbird Engineering Sales, Inc. v. Bi-State Development Agency,* 806 S.W.2d 695, 701 (Mo.App. 1991). The protection is not necessarily the same protection that mechanics' lien statutes provide on private projects.

*Bertolino* held the "joint check rule" applicable to claims asserted against a surety bond issued pursuant to requirements of § 107.170. "The joint check rule" was recited as providing "that, in the absence of an agreement to the contrary, if a material supplier receives and endorses a joint check without collecting the amount then due from the maker, the supplier is not entitled to assert a mechanic's lien or payment bond claim." 963 S.W.2d at 333. The court stated, "If the legislature intended for publicly employed laborers to receive more protection than privately employed laborers, it would have so provided." *Id.* at 334–35. In *Bertolino* there was no applicable statute. In this case there are applicable statutes.

This is a statutory cause of action. Applicable statutes are those directed to prevailing wages on public works, §§ 290.210 through 290.340. The trial court erroneously declared that recovery of double the differences of wages owed and paid and recovery of attorney fees permitted by § 290.300 did not apply to a subcontractor's employee's action against the contractor and its surety. The judgment is reversed as to amount of damages awarded. The case is remanded. The trial court is directed to enter judgment for damages that are double the differences between the amounts the respective employees were paid and the rates provided by contract, together with reasonable attorney fees. In all other respects the judgment is affirmed.

PREWITT, P.J., and CROW, J., concur.