JOHN ROLFE ET AL. *v.* NEW BRITAIN GENERAL HOSPITAL ET AL.

Superior Court        Judicial District of        File No. CV990496563S
                      New Britain

Memorandum filed October 11, 2001

*Perakos & Zitser,* for the plaintiffs.

*O'Brien, Tanski & Young,* for the named defendant.

*Cooney, Scully & Dowling,* for the defendant Jeffrey M. Kagan et al.

## I

## INTRODUCTION

SHORTALL, J. New Britain General Hospital, Jeffrey M. Kagan, a physician, and Turgot Yetil, a physician, the defendants in the present medical malpractice action, deposed two expert medical witnesses retained by the plaintiffs, John Rolfe, George O. Rolfe and Ellen M. Rolfe. While the defendants agree that they are responsible for paying the physicians, who served as expert witnesses, a reasonable fee for their attendance at the depositions, the defendants object to paying for the time the aforementioned physicians spent in preparation for the depositions. The plaintiffs have moved to compel payment.

## II

The parties start in agreement that "[i]t is a settled principle of our common law that parties are required to bear their own litigation expenses, except as otherwise provided by statute. . . . Furthermore, because [c]osts are the creature of statute . . . unless the statute clearly provides for them courts cannot tax them." (Citation omitted; internal quotation marks omitted.) *M. DeMatteo Construction Co.* v. *New London,* 236 Conn. 710, 715, 674 A.2d 845 (1996) (*DeMatteo*). They also agree that there has been a split of authority among Superior Court judges over whether preparation time for deposition or trial testimony is a taxable cost or otherwise payable by the opposing party. The plaintiffs claim that the majority and better view is that it is; the defendants argue that whatever merit there may have been in those trial court decisions that required the opposing party to pay such costs has been vitiated by

the Supreme Court's decision in *DeMatteo*. That decision, the defendants claim, resolved once and for all that preparation costs either for trial or deposition testimony are not taxable to the opposing party under General Statutes § 52-260 (f), which provides in pertinent part: "When any practitioner of the healing arts . . . is summoned to give expert testimony in any action or proceeding, the court shall determine a reasonable fee to be paid to the practitioner of the healing arts . . . and taxed as part of the costs in lieu of all other witness fees payable . . . ."

Although the plaintiffs referred in passing to Practice Book § 13-4 (3) in their memorandum of law in support of their motion to compel, neither they nor the defendants argued the effect of this rule of practice on the question presented; viz., who pays the cost of preparation by an expert witness for a deposition, even though the rule seems to bear directly on that question.[1] Practice Book § 13-4 (3) provides in pertinent part: "Unless manifest injustice would result, (A) the judicial authority shall require that the party seeking discovery pay the expert a reasonable fee for *time spent in responding to discovery* under subdivisions 1 (B) and (2) of this rule . . . ." (Emphasis added.)

Subdivision 1 (B) of the rule authorizes a party to take the deposition of any expert whom the other party expects to call as a witness at trial. Thus, the rule requires that the "party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery" by way of a deposition. Practice Book § 13-4 (3). It seemed to the court at least arguable that Practice Book § 13-4 (3) constitutes a "legislative" exception to the "American rule" restated in *DeMatteo*; i.e., that each party bears its own litigation costs unless otherwise provided by statute, and that the text of the

---

[1] Nor did any of the cases the parties cited analyze the effect of the rule.

rule was broad enough to cover preparation costs. Therefore, the court granted the defendants' request for oral argument on the plaintiffs' motion and ordered the parties to address the effect of this rule of practice if any, on the "American rule" as applied to deposition costs.

The defendants maintain their position that *DeMatteo* is controlling. To the degree that Practice Book § 13-4 (3) may indicate that preparation time is to be paid for by the party noticing the deposition, they question its constitutionality in light of the Supreme Court's interpretation of § 52-260 (f) in *DeMatteo*. It is necessary, therefore, to look carefully at that case to see what it did and, more to the point, did not decide.

### III

In *DeMatteo*, the plaintiff, a successful property owner in a tax assessment appeal, sought to tax as costs not only the fee of its appraiser to testify in court but also the appraiser's fee to prepare an appraisal report. The plaintiff relied, in part, on § 52-260 (f).[2] The Supreme Court declined to allow recovery of the cost of the report.

Two aspects of *DeMatteo* are notable. First, it had nothing at all to do with depositions. In fact, the court held that "§ 52-260 (f) treats as taxable *only those costs that arise from an expert's testimony at trial*"; (emphasis added) *M. DeMatteo Construction Co.* v. *New London*, supra, 236 Conn. 717; casting doubt on those Superior Court cases which have held that the statute controls the award of costs for depositions.[3] Second,

---

[2] The plaintiffs also relied on General Statutes § 12-117a, which broadly authorizes a successful taxpayer to tax its "costs," without specifying which ones. The court's analysis of that statute is not relevant to the discussion here.

[3] See, e.g., *Dann* v. *Bollinger*, Superior Court, judicial district of New London at Norwich, Docket No. CV970113058S (August 30, 1999) (25 Conn. L. Rptr. 385) (*Koletsky, J.*), and cases cited therein.

the plaintiff sought to recover not the cost of the appraiser's preparation to testify in court but the cost of the report he prepared at some unspecified time and which, itself, was introduced into evidence at the hearing on the appeal of the assessment. "The plaintiff . . . filed a bill of costs seeking, among other things, reimbursement for the $12,000 fee that it had paid to [the appraiser] *for his appraisal report*." (Emphasis added.) Id., 713.

An examination of the record and briefs in *DeMatteo* makes that crystal clear. In their bill of costs, the plaintiffs-appellants sought a "Real Estate Appraisal Fee" of $12,000, not the cost of the witness' preparation for trial. *M. DeMatteo Construction Co.* v. *New London*, Conn. Supreme Court Records & Briefs, January Term, 1996, Pt. 1, Record p. 15. In their statement of the issue on appeal, after the trial judge had refused to include that fee in the taxable costs, the plaintiffs-appellants described the issue as whether the court lacked statutory authority to tax the cost of "preparing an appraisal report admitted into evidence . . . ." Id., Brief of Plaintiffs-Appellants p. ii. In their brief, the plaintiffs-appellants argued simply that there was an "inextricable link" between the report and the appraiser's testimony and that it "does not make sense to distinguish the . . . report from the . . . testimony. . . ." Id., Brief of Plaintiffs-Appellants, pp. 8–9. Thus, the plaintiffs-appellants were seeking the entire cost of preparing the report, not the cost of the appraiser's preparation to testify at trial.[4]

It was as if the deposed physicians in the present case were seeking to be compensated for the entire cost of their work in evaluating the plaintiff's injury and the conduct of the defendants, including the prepa-

---

[4] This point is driven home by the gross disparity between the fee sought for the expert's testimony, $2100; *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 713 n.5, 674 A.2d 845 (1996); and the fee sought for the report, $12,000.

ration of any reports they may have written, not just the time they spent in getting ready to answer the questions that might be propounded to them at their depositions. Indeed, that is how the trial judge in *DeMatteo* understood the plaintiffs-appellants' request there, likening it to situations the court had faced with accident reconstruction experts, in which it had held that the party calling the expert could get his fee for testifying but not the cost of "doing the accident reconstruction." Id., Appendix to Brief of Plaintiffs-Appellants p. 10.

Thus, the Supreme Court in *DeMatteo* was not required to decide, and did not decide, whether the "reasonable fee" a court may allow to an expert witness who "is summoned to give expert testimony in any action or proceeding" may include some amount for preparation time. Rather, it was asked to decide, and did decide, that a "reasonable fee" for a testifying expert did not include the cost of preparing a report, prior to his testimony, which was admitted into evidence at trial. The court's observation that "it is undoubtedly true that some or all of the work done by a real estate appraiser in preparing a report will provide the basis for the appraiser's testimony"; *M. DeMatteo Construction Co.* v. *New London*, supra, 236 Conn. 718; does not transform the case from what the record shows it is, a request for payment for an expert's report, to a request for payment for the expert's time to prepare for his testimony at trial.

Because the Supreme Court's decision in *DeMatteo* did not arise out of testimony at a deposition and did not, when closely examined, consider the taxability of the cost of a witness' preparation to testify, the court does not believe that it is required to sustain the defendants' objection to the plaintiffs' motion to compel their payment of a reasonable fee for the preparation time of their experts who testified at depositions.

Since *DeMatteo* does raise a question in the mind of the court, however, whether § 52-260 (f) applies to the award of costs for a deposition[5] and, given that Practice Book § 13-4 (3) so clearly does apply, the court will consider the question raised by the plaintiffs' motion and the defendants' objection in light of the history, language and interpretation of the latter.

### IV

The judges of the Superior Court are authorized by statute to "adopt . . . rules . . . regulating pleading, practice and procedure in judicial proceedings in courts in which they have the constitutional authority to make rules, for the purpose of simplifying proceedings in the courts and of promoting the speedy and efficient determination of litigation upon its merits." General Statutes § 51-14 (a). Those rules of practice "have the force of law." *Mozzochi* v. *Beck*, 204 Conn. 490, 501 n.7, 529 A.2d 171 (1987); see also *Young* v. *Newark Fire Ins. Co.*, 59 Conn. 41, 45, 22 A. 32 (1890). The control of discovery procedure in cases pending in court is "within the court's inherent power"; *State* v. *Clemente*, 166 Conn. 501, 516, 353 A.2d 723 (1974); a power so carefully guarded that a statute which encroaches on it is unconstitutional. Id.

The language of Practice Book § 13-4 (3) does not limit the financial responsibility of the party seeking further discovery concerning an expert's testimony to the expert's time at the deposition and is broad enough to include payment of a reasonable fee not only for testimony but also for preparation: "[the court] shall require that the party seeking discovery pay the expert a reasonable fee *for time spent in responding to discovery* . . . ." (Emphasis added.) Moreover, the genesis and evolution of the rule as well as the application of the identical federal rule support such an interpretation.

---

[5] See part III of this opinion, infra, pp. 299–300.

What is now Practice Book § 13-4 was adopted by the judges of the Superior Court in 1978 as Practice Book § 167C. 1 W. Moller & W. Horton, Connecticut Practice Series: Practice Book Annotated (3d Ed. 1989) § 220, p. 396. What is now subdivision (3) of Practice Book § 13-4 was formerly subdivision (C) of Practice Book § 167C. It was then and is now a carbon copy of rule 26 (b) (4) (C) of the Federal Rules of Civil Procedure. The intent of the federal rule, when it was adopted in 1970, was to "meet the objection that it is unfair to permit one side to obtain without cost the benefit of an expert's work for which the other side has paid, often a substantial sum." Fed. R. Civ. P. 26, Advisory Committee Note of 1970. This goal would be best served by an expansive interpretation of the rule's imposition of financial responsibility on the party seeking to obtain "facts and opinions from the expert." Fed. R. Civ. P. 26 (b) (4) (C).

What is more significant, however, is how the language of another part of the federal and Practice Book rules has changed. Prior to 1993, both rules allowed the court to order further discovery of an expert's opinions by a variety of methods; e.g., interrogatories, requests for production, requests for admissions and depositions. Pursuant to what is now Practice Book § 13-4 (3), the party seeking discovery had to pay the expert a reasonable fee for work done in "responding to discovery" in those various ways without regard to where or how that work was done.

In 1995, however, the Practice Book rule was changed to provide that this further discovery was to be by deposition only. What is significant for our purposes is that the payment rule was not changed at the same time. The court still must require the party seeking discovery, now via deposition, to pay the expert a reasonable fee for "time spent in responding to discovery." Practice Book § 13-4 (3). Had the judges wanted to limit

payment to only the time spent actually in testifying at a deposition, they could have done so, and they did not.

The federal rule had been changed in essentially the same way in 1993. Fed. R. Civ. P. 26 (Sup. 2001). The reason why the payment rule was left unchanged is made clear in the advisory committee note to the federal rule: "[P]aragraph (4) (A) [the counterpart of Connecticut's § 13-4 (1) (B)] is revised to provide that experts who are expected to be witnesses will be subject to deposition prior to trial, conforming the norm stated in the rule to the actual practice followed in most courts, in which depositions of experts have become standard. *Concerns regarding the expense of such depositions should be mitigated by the fact that the expert's fees for the deposition will ordinarily be borne by the party taking the deposition.*" (Emphasis added.) Fed. R. Civ. P. 26, Advisory Committee Note of 1993. In keeping with this concern to control the prevalence and cost of depositions, most federal courts which have interpreted and applied rule 26 (b) (4) (C) of the Federal Rules of Civil Procedure, have held that preparation time is payable by the party seeking to depose the expert witness. See *Magee* v. *Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 646 (E.D.N.Y. 1997). Even those courts that have held that the federal rule does not require payment for preparation time *as a general proposition* have undercut their holding by finding that "[t]here may be some cases where compensation of an expert for time spent preparing for a deposition is appropriate, such as in a complex case"; *Rhee* v. *Witco Chemical Corp.*, 126 F.R.D. 45, 47 (N.D. Ill. 1989); and actually ordering compensation for preparation time. *S. A. Healy Co.* v. *Milwaukee Metropolitan Sewerage Disrict*, 154 F.R.D. 212, 214 (E.D. Wis. 1994), cert. denied, 516 U.S. 1010, 116 S. Ct. 566, 133 L. Ed. 2d 491 (1995). As one court noted, in critiquing such cases, "[e]ither the phrase 'time spent responding to discovery' includes deposition preparation time, or it does not. . . . In short, the Rule on its

face does not permit a construction that says that such fees may not be awarded, but still somehow allows for them in unusual or exceptional cases." *Collins* v. *Woodbridge*, 197 F.R.D. 354, 357 (N.D. Ill. 1999).

*Collins* found that "the shifting of the expert's fees for deposition preparation, as well as for the deposition itself, is consistent with the overall purpose of Rule 26, as amended in 1993. . . . Time spent preparing for a deposition is, literally speaking, time spent in responding to discovery . . . . And because depositions are the only type of 'discovery under this subdivision'—i.e., under Rule 26 (b) (4) [the federal counterpart to Practice Book § 13-4]—it would have been relatively easy for the Rule's drafters to limit recovery to the time actually spent appearing for the deposition if that was what they had intended to do." Id.

Likewise, this court believes that a construction of Practice Book § 13-4 (3), which requires a party seeking to depose an expert to pay both for their attendance at the deposition and a reasonable fee for their preparation to respond to questions at the deposition, is well within the language of the rule. Further, it comports with what appears to have been the intent of the drafters when they followed the approach of the federal rule by shifting the mode of expert discovery to depositions and leaving the payment rule intact.[6]

Of course, the canons of statutory construction apply to Practice Book rules; *State* v. *Cook*, 183 Conn. 520, 521–22, 441 A.2d 41 (1981); and one of those canons is that statutes in derogation of the common law are to

---

[6] Other courts interpreting the federal rule have noted that: "[C]ompensating [the expert] for his time spent reviewing [the] [p]laintiff's medical records speeds the deposition process along, thereby saving on costs. The more costly alternative would be for [the expert] to refresh his memory during the deposition with the medical records." *Hose* v. *Chicago & North Western Transportation Co.*, 154 F.R.D. 222, 228 (S.D. Iowa 1994), aff'd, 70 F.3d 968 (8th Cir. 1995); see also *Magee* v. *Paul Revere Life Ins. Co.*, 172 F.R.D. 647 (E.D.N.Y. 1997).

be strictly construed. *Union Trust Co.* v. *Heggelund*, 219 Conn. 620, 626, 594 A.2d 464 (1991). This canon is given voice in cases such as *DeMatteo*, limiting the obligation of one party to pay the litigation costs of another, when they hold that because "[c]osts are the creature of statute . . . unless the statute *clearly* provides for them courts cannot tax them." (Emphasis added; internal quotation marks omitted.) *M. DeMatteo Construction Co.* v. *New London*, supra, 236 Conn. 715; see also *Willoughby* v. *New Haven*, 123 Conn. 446, 454, 197 A. 85 (1937).

Strict construction, however, "does not consist in giving the words of a statute the narrowest meaning of which they are susceptible . . . and strict construction is in no way violated if the words of a statute are given their full meaning." (Citation omitted; internal quotation marks omitted.) *McKeon* v. *State*, 211 Md. 437, 444, 127 A.2d 635 (1956). "[B]y the expression 'strict construction' is meant that the scope of the statute shall not be extended by implication beyond the literal meaning of the terms employed, and not that the language of the terms shall be unreasonably interpreted. Courts . . . should give effect to the plain meaning of words and where they are doubtful, should adopt the sense in harmony with the context and the obvious policy and object of the enactment." *Board* v. *Eurostyle, Inc.*, 998 S.W.2d 810, 814 (Mo. App. 1999).

In discussing "strict construction" in the closely related field of penal law construction, the Connecticut Supreme Court has said: "Strict construction does not mean that a statute must be read in isolation. In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result. . . . The rule of strict construction does not require that the narrowest technical meaning be given to the words employed in a criminal statute in disregard of their context and in

frustration of the obvious legislative intent. . . . *In re Luis R.*, 204 Conn. 630, 635, 528 A.2d 1146 (1987). Such authority demonstrates that the rule of strict construction of penal statutes is not without limitation; the doctrine of strict construction is only one of the aids which is to be used in the construction of penal statutes. See 3 J. Sutherland, Statutory Construction (4th Ed. 1986) § 59.06. Other aids include such things as the statutory language itself, legislative history where available, the furthering of the policy and purposes fairly apparent from the statute which include the mischief sought to be proscribed and related statutes." (Internal quotation marks omitted.) *Singh* v. *Singh*, 213 Conn. 637, 646–47, 569 A.2d 1112 (1990).

When the language of Practice Book § 13-4 (3) is considered, as well as its history and apparent purposes, it would be an unreasonably narrow construction to limit its terms to payment only for time spent at the deposition and not in preparation for it. As the United States District Court stated in *Collins* v. *Woodbridge,* supra, 197 F.R.D. 357, "[t]ime spent preparing for a deposition is, literally speaking, time spent in responding to discovery . . . ."

Neither does construing the rule in this manner put it in conflict with related statutes. As indicated previously, *DeMatteo* itself suggests that § 52-260 (f), concerning fees to be paid to expert witnesses, has no application to deposition costs.[7] Moreover, General Statutes § 52-149a (b), concerning depositions of medical witnesses, by its terms applies only to payments for "giving testimony" at the deposition.[8] Properly considered, Practice

---

[7] See footnote 5.

[8] A recent trial court decision holding that a party taking a deposition on her opponent's expert witness is not responsible for the witness' preparation fee, partly on the authority of § 52-149a (b), did not consider the effect of Practice Book § 13-4 (3). *Jenkins* v. *Kos*, Superior Court, judicial district of Hartford, Docket No. CV990088449S (September 12, 2000) (28 Conn. L. Rptr. 134) (*Miano, J.*).

Book § 13-4 (3) does not conflict with any statutes governing the payment of the costs of litigation. Rather, it supplements and clarifies them in an area of practice and procedure which is within both the constitutional and statutory purview of the Superior Court. See *Young* v. *Young*, 249 Conn. 482, 495–96, 733 A.2d 835 (1999); *Mitchell* v. *Mitchell*, 194 Conn. 312, 324, 481 A.2d 31 (1984); *Duve* v. *Duve*, 25 Conn. App. 262, 266–68, 594 A.2d 473, cert. denied, 220 Conn. 911, 597 A.2d 332 (1991), cert. denied, 502 U.S. 1114, 112 S. Ct. 1224, 117 L. Ed. 2d 460 (1992).

In truth, requiring parties deposing their opponents' expert witnesses to pay the costs of preparation does not conflict with the principle behind the common-law rule that parties pay their own litigation costs. That rule makes perfect sense for those costs that are within the control of the party who retains the expert; e.g., consultation time and trial preparation time. It makes no sense, however, when those costs are incurred only because of actions of the opposing party, who is in control of the entire process from the decision to depose the expert to the scope of the material subpoenaed for the deposition, and, thus, the scope of matters into which inquiry will be made as to the length and detail of the questioning at the deposition. Finally, it is counterproductive to the goal of the "speedy and efficient determination of litigation upon its merits"; General Statutes § 51-14 (a); to permit the parties to take all the depositions they want without responsibility for the costs generated by those depositions.[9]

V

CONCLUSION

Practice Book § 13-4 (3) requires the court to order that "the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery"

---

[9] See the discussion of the reason behind the federal rule's payment requirement infra, p. 304.

under subdivision (1) (B) of the same rule, the subdivision permitting the deposition of any expert whom the other party expects to call as a witness at trial. Properly interpreted, the rule includes a reasonable fee for time spent preparing to testify as well as the expert's actual attendance at the deposition. The plaintiffs' motion to compel payment is granted, therefore, and the defendants' objection to it is overruled.

The plaintiffs claim, and the defendants do not seem to dispute, that one of the plaintiffs' experts, David Weinshel, a physician, was deposed for six hours and the other, Jan H. Mashman, a physician, for nine hours over the course of two days. Based on the materials submitted in support of and in opposition to the plaintiffs' motion, the court finds that the payment sought by Weinshel for four and one-half hours of preparation time at $200 per hour is reasonable. Based on the same materials, the court further finds that a reasonable fee for Mashman's preparation time of five hours is $250 per hour.

The defendants are ordered to pay these fees, along with the fees for attendance at the depositions, within thirty days hereof.